# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-00216-SCT

*TONNIE L. THOMAS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/09/2009 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY:   LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:   JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/23/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     Tonnie L. Thomas was indicted for fourth-degree arson for setting fire to a jail cell in Greenville, Mississippi.  On January 28-29, 2009, Thomas was tried in the Circuit Court of Washington County.  The jury convicted Thomas of fourth-degree arson.  Thomas had a separate sentencing hearing and was determined to be an habitual offender pursuant to Mississippi Code Section 99-19-83.  The trial court sentenced Thomas to life in the custody of the Mississippi Department of Corrections (MDOC) without the possibility of parole or

probation. Thomas now appeals from that conviction and sentence. Finding no error, this Court affirms the verdict and sentence.

**FACTS**

¶2. While detained in the City of Greenville Jail, Thomas admittedly set a fire in his jail cell. Officer Terrence Wigfall, a patrolman, testified at Thomas's arson trial that on March 3, 2007, he had been working as a jailer at the Greenville Police Department. Early that morning, Wigfall and Thomas had a confrontation. Thomas was in a single-man jail cell located in the rear of the jail. The cell had three concrete walls and one wall of bars. Both men "exchanged words back and forth" that day. Thomas requested some medical attention for wounds that he had received at a previous time. Officer Wigfall stated that "I told him I wasn't going to clean his wounds, but I would get the stuff for him to clean them himself." As Wigfall walked away, Thomas made a remark like "I have something for you" and Wigfall returned to Thomas's cell. When Wigfall went toward the cell, Thomas grabbed a bucket, dipped it into the toilet, and threw the water in Wigfall's face. Wigfall stated that Thomas made a statement "[t]hat he [Thomas] would kill me if he wasn't locked up."

¶3. Later that day, Howard Plant, a trusty, ran to the jailer's office located in the front of the jail and screamed that there was a fire. Wigfall ran to the back of the jail; saw a fire in the first cell, which was Thomas's cell; and ran to the front of the jail to get a fire extinguisher. When Wigfall first arrived at the cell, he saw a blanket that had been woven through the bars of the cell and a small fire. Because of the blanket, Wigfall could not see inside the cell or see Thomas. Officer Donell Robinson was with Wigfall when the fire occurred. Wigfall turned around to get an extinguisher, and by the time Officer Robinson

2

returned with another extinguisher, Wigfall had put out the fire. However, the fire had spread in the time that it took Wigfall to return with an extinguisher. During this time, Thomas, as far as Wigfall knew, was still in his cell. Wigfall could not see Thomas because of the smoke and because the cell was dark. The smoke drifted from Thomas's cell into the other cells, causing other inmates to cough from the smoke. Wigfall notified the police captain of the fire and the fire department. The fire department arrived at the jail. Thomas was restrained and placed in the drunk tank. On the way to the holding tank, Wigfall stated that Thomas said, "Yeah, I set the fire. Yeah, I set the fire." Wigfall stated that Thomas had an angry demeanor as he was going to the tank and that he was covered in dry extinguisher powder. The fire department then began to ventilate the area with fans. Wigfall stated that Thomas was angry because he was denied use of the telephone and he had been denied medical attention. At that point, Thomas set the fire.

¶4. After Wigfall's testimony, Thomas requested to return to jail for the remainder of the trial. The trial court had an on-the-record discussion with Thomas and his counsel, informing Thomas of the limitations should Thomas wish to testify in his trial. Thomas did not want to testify, and he returned to jail. The trial court instructed the jury on its return to the courtroom that Thomas had chosen voluntarily to absent himself from the proceedings.

¶5. Robinson also testified and substantiated much of Wigfall's account of the incident. Robinson was with Wigfall when Thomas threw the toilet water into Wigfall's face. Robinson testified, "Yeah. [Thomas] said he was going to kill – he was going to kill somebody. He wanted to kill an officer." Robinson later clarified that Thomas had meant that he wanted to kill Wigfall.

¶6. After the fire had been extinguished and while Thomas was being escorted to the drunk tank, Robinson heard Thomas state, "Yeah, I wanted to see what you all made of. I was going to kill everybody in here." On cross-examination, Robinson admitted that his report did not have Thomas's statement that he wanted to kill everyone. However, Robinson stated that Thomas did admit that "I started this fire with matches." Robinson also stated that Thomas had said that he set the fire to get out of his cell.

¶7. Victor Anderson, captain of the Greenville Fire Department, testified that, prior to verifying that the fire had been extinguished, he had waited for the police to get an inmate out of the cell. As the police officers handcuffed and brought the inmate out of the cell, the inmate stated "I tried to kill them, I tried to see what they were made out of." The fire department ventilated the jail for about twenty minutes to clear the thick smoke from the fire. Anderson described the cell as being charred and having dry extinguisher chemicals throughout the room. The walls of the cell were charred, and the top part of the enclosed ceiling had damage. Anderson stated that charring could be caused only by fire. In addition, Anderson stated that he did not know who the inmate wanted to kill and that his report did not contain the statement made by the inmate. He also testified that he was not permitted to assess the value of property damage to a structure.

¶8. Officer Christopher Tharp also responded to the fire at the Greenville City Jail. According to his testimony, when he entered the building, he noticed heavy smoke. As he went upstairs to the jail, another officer, Officer Equoane Smith, was ahead of him. Once he saw that the fire was extinguished, Tharp, Smith, and other jail staff escorted Thomas to the "small tank." Tharp stated that Thomas had said "I caught it on fire. Yeah, I caught it.

4

I caught it . . . . Yeah, yeah, I caught it. I caught it on fire with matches." After ventilation of the jail was completed, Tharp gathered evidence of the fire. Tharp collected a blanket, a sheet, and a Double Quick match box with no wooden matches in it. The sheet was in small pieces because of the fire. Officer Smith also testified that he had heard Thomas state "Yeah, I set it, yeah, I set it." At the time, Smith did not know what Thomas was referring to in his statement.

¶9. Fred Jones, Jr., a jailer at the Greenville Police Department, testified about the condition of the jail cell. He noticed that a blanket, sheet, and mattress were burned in the cell. The mattress was thrown away, because the center was badly burned and unusable. Later, the cell was repainted and sanitized with bleach to clean the soot.

¶10. James Whitehead, a support-service worker at the Greenville Police Department, proffered testimony outside the presence of the jury about the repairs to the jail cell after the fire. In his proffer, Whitehead stated that he did not know the cost of the repairs for the damage to the cell.

¶11. Following his conviction and sentence, Thomas raised four issues on appeal as follows:

### I. Sufficiency of the Evidence and Weight of the Evidence

¶12. Thomas asserts that the evidence was insufficient to support the jury verdict and that the verdict was against the overwhelming weight of the evidence. Thomas claims that he was simply trying to get attention because he wanted to make a telephone call and to get medical attention.

### A. Sufficiency of the evidence

¶13.   This Court has stated that the standard of review for a directed verdict and a judgment notwithstanding the verdict are the same.  ***Barfield v. State***, 22 So. 3d 1175, 1185 (Miss. 2009).  Both challenge the legal sufficiency of the evidence.  ***Id***.  On appellate review, this Court must "consider all of the evidence – not just the evidence which supports the case for the prosecution – in the light most favorable to the verdict" in regard to each element of the offense.  ***Fleming v. State***, 732 So. 2d 172, 182 (Miss. 1999) (citing ***Cooper v. State***, 639 So. 2d 1320, 1324 (Miss. 1994)).  When credible evidence is consistent with guilt, it is accepted as true, and the prosecution has the benefit of all reasonable inferences drawn from this evidence.  ***Cooper***, 639 So. 2d at 1324.  In ***Stewart v. State***, 986 So. 2d 304, 308 (Miss. 2008), this Court stated:

> [T]he critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." ***Carr v. State***, 208 So. 2d 886, 889 (Miss. 1968).  The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. ***Jackson v. Virginia***, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L. Ed. 2d 560 (1979).

***Stewart v. State***, 986 So. 2d 304, 308 (Miss. 2008) (quoting ***Jones v. State***, 904 So. 2d 149, 153-54 (Miss. 2005)).

¶14.   The indictment stated in part:

> That **TONNIE L. THOMAS,** on or about 3rd Day of March, 2007, in Washington County, did unlawfully, willfully and feloniously and maliciously attempt to set fire to or attempt to burn the Greenville City Jail, located at 216 Main Street, Greenville, Mississippi, the personal property of the City of Greenville. . . .

6

¶15.   The State indicted Thomas for fourth-degree arson pursuant to Mississippi Code

Section 97-17-9(1).  This section states:

> Any person who wilfully and maliciously attempts to set fire to or attempts to
> burn or to aid, counsel or procure the burning of any of the buildings or
> property mentioned in the foregoing sections, or who commits any act
> preliminary thereto, or in furtherance thereof, shall be guilty of arson in the
> fourth degree and upon conviction thereof be sentenced to the penitentiary for
> not less than one nor more than two years or fined not to exceed one thousand
> dollars.

Miss. Code Ann. § 97-17-9(1) (Rev. 2006).

¶16.   The evidence at trial showed that Thomas wilfully and maliciously attempted to set

fire or burn the Greenville City Jail.  A fire occurred in the jailhouse cell occupied by

Thomas.  Jailers responded to the fire by opening a fire extinguisher and dousing the cell

with the chemical.  After the fire was extinguished, the evidence recovered from Thomas's

cell consisted of a burned blanket, pieces of a burned sheet, a burned mattress, and an empty

matchbox, which normally held wooden matches.  The cell was charred by the fire, and the

walls had to be sanitized and repainted.  Upon notification of the fire, the fire department

responded, and while there was no longer a fire on their arrival, the jail had thick smoke and

had to be ventilated by fire department personnel.

¶17.    Numerous witnesses testified that Thomas had admitted to setting fire to the jail.

Furthermore, Wigfall stated that Thomas had stated that he would kill Wigfall if he was not

in jail.  Officer Robinson corroborated Wigfall's testimony and stated that Thomas wanted

to kill an officer, that being Wigfall.  Robinson also heard Thomas state that he was going

to kill everyone and that he wanted to see what everyone was "made of."  Additionally, when

law-enforcement staff escorted Thomas to the "tank," the fire captain, Anderson, stated that

7

he had heard Thomas state that he had tried to kill everyone and had tried to see what they were "made out of."

¶18.    Thomas asserts that no reasonable juror could have found other than  that he was attempting to burn the jail because he was simply trying to get medical attention and make a telephone call.  The evidence supporting this assertion is minimal, at best.  Officer Wigfall stated that Thomas wanted attention, and when he did not get it, Thomas started the fire.  However, Wigfall did not know whether Thomas was trying to get attention or to harm everyone.  Officer Robinson testified that one of the reasons Thomas set the fire was to get out of jail.  But Robinson also said that Thomas stated "he wanted to kill everybody in there."  Considering the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Thomas willfully and maliciously set the fire in an effort to harm persons at the jail.  Thomas's observations that Officer Robinson and Captain Anderson had not included Thomas's statement to the effect that he wanted to "kill" others in their reports was a credibility issue to be resolved by the jury.  *See Nelson v. State*, 10 So. 3d 898, 908 (Miss. 2009).

¶19.    When viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of fourth-degree arson beyond a reasonable doubt.  This Court finds that the verdict was based on legally sufficient evidence, and reversal is not warranted in this case.

   **B.    Weight of the Evidence**

¶20.    A challenge to the weight of the evidence is separate and distinct from a challenge to the legal sufficiency of the evidence.  *Fleming*, 732 So. 2d at 183.  The party who challenges

8

the weight of the evidence seeks a new trial. ***Barfield***, 22 So. 3d at 1187. Under these circumstances, the standard of review is an abuse of discretion, and reversal is warranted where the trial court abused its discretion by denying a party a new trial. ***Id***. This Court will not disturb a verdict unless the verdict is "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Fleming***, 732 So. 2d at 183; *see also* ***Nelson***, 10 So. 3d at 908. This Court weighs the evidence in the light that is most favorable to the verdict. ***Jones***, 904 So. 2d at 154. On issues of witness credibility, the jury determines the weight and credibility of each witness's testimony. ***Nelson***, 10 So. 3d at 905.

¶21. Thomas asserts that the only logical conclusion the jury could have reached was that he had set fire to the sheet and blanket for attention and not to burn the jail. Again, the record reveals only a scintilla of evidence that Thomas merely wanted attention. The evidence showed that Thomas had asked to use the telephone and to get medical attention. Officer Wigfall was to provide materials for Thomas's wounds. However, Thomas also admitted to starting the fire with matches, to wanting to kill everyone, and to wanting to see what everyone was "made of" or "made out of." Consequently, the overwhelming evidence was that Thomas had wanted to set fire to the jail to harm the persons within the jail. Viewing the evidence in the light most favorable to the verdict, we find that the verdict was not so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. The trial court did not err by denying Thomas's motion for new trial, and a new trial is not warranted in this case.

**II.    Jury Instruction on Lesser Offense of Malicious Mischief and/or Vandalism**

9

¶22. Thomas next argues that the trial court erred by refusing his lesser-offense jury instructions on malicious mischief and/or vandalism. He contends that jury instructions D-8 and D-9 should have been given to the jury, as they represented his theory of the case.

¶23. This Court reads jury instructions as a whole and not in isolation. *Rushing v. State*, 911 So. 2d 526, 537 (Miss. 2005). When the instructions are read as a whole, "if the instructions fairly announce the law of the case and create no injustice[,]" the appellate court will find no reversible error. *Montana v. State*, 822 So. 2d 954, 958 (Miss. 2002). "A defendant is entitled to jury instructions on his theory of the case whenever there is evidence that would support a jury's finding on that theory." *Id*. at 962. However, a trial court may refuse a jury instruction when it is an incorrect statement of law, fairly covered in other instructions, or has no foundation in the evidence. *Poole v. State*, 826 So. 2d 1222, 1230 (Miss. 2002) (citing *Smith v. State*, 802 So. 2d 82, 88 (Miss. 2001)). Reversal is not warranted when instructions, taken as a whole, fairly, though not perfectly, announce the law. *Rushing*, 911 So. 2d at 537.

¶24. The State indicted Thomas on fourth-degree arson pursuant to Mississippi Code Section 97-17-9(1). This code section was set out in Issue I and will not be repeated here. Thomas claims that either the malicious mischief or vandalism statute is applicable to his case. The 2003 amendment to Mississippi Code Section 97-17-67, which was in effect at the time Thomas was indicted and pertained to malicious mischief, stated:

> (1) Every person who shall maliciously or mischievously destroy, disfigure, or injure, or cause to be destroyed, disfigured, or injured, any property of another, either real or personal, shall be guilty of malicious mischief.

10

(2) If the value of the property destroyed, disfigured or injured is Five Hundred Dollars ($500.00) or less, it shall be a misdemeanor punishable by a fine of not more than One Thousand Dollars ($1,000.00) or imprisonment not exceeding twelve (12) months in the county jail, or both.

(3) If the value of the property destroyed, disfigured or injured is in excess of Five Hundred Dollars ($500.00), it shall be a felony punishable by a fine not exceeding Ten Thousand Dollars ($10,000.00) or imprisonment in the Penitentiary not exceeding five (5) years, or both.

(4) In all cases restitution to the victim for all damages shall be ordered. The value of property destroyed, disfigured or injured by the same party as part of a common crime against multiple victims may be aggregated together and if the value exceeds One Thousand Dollars ($1,000.00), shall be a felony.

(5) For purposes of this statute, value shall be the cost of repair or replacement of the property damaged or destroyed.

(6) Anyone who by any word, deed or act directly or indirectly urges, aids, abets, suggests or otherwise instills in the mind of another the will to so act shall be considered a principal in the commission of said crime and shall be punished in the same manner.

Miss. Code Ann. § 97-17-67 (2003). *See* Amended Bylaws 2003, Ch. 434, § 1, eff. July 1, 2003. The Legislature amended section 97-17-67 in 2009; however, that amendment is inapplicable to Thomas's argument, as the event occurred in 2007 and Thomas was indicted in 2008, before the effective date of the 2009 amended statute. *See* Laws 2009, Ch. 379, § 2, eff. July 1, 2009.

¶25. Thomas sought to have proposed jury instruction D-8 submitted to the jury. Proposed jury instruction D-8 related to malicious mischief and stated:

> The Court instructs the Jury that should you find that the State of Mississippi has failed to prove to you, from the evidence, beyond a reasonable doubt that Tonnie Thomas is guilty of trying to burn the Greenville City Jail as alleged in the indictment, then you should continue your deliberations to decide whether Tonnie Thomas is guilty or not guilty of the misdemeanor crime of malicious mischief.

The Mississippi law states that if any person shall willfully or mischievously injure or destroy any of the work, materials, or furniture of any jail, then that person is guilty of malicious mischief. If you find that Tonnie Thomas is guilty of malicious mischief, then you should write your verdict on a separate sheet of paper, and the form of your verdict shall be:

"We, the Jury, find Tonnie Thomas guilty of the misdemeanor crime of malicious mischief[."]

If you find that the State of Mississippi had failed to prove this crime of malicious mischief, then you should write your verdict on a separate piece of paper and the form of your verdict shall be:

"We, the Jury, find Tonnie Thomas not guilty."

¶26. Thomas also sought to have a jury instruction on vandalism. Mississippi Code

Section 97-17-39 concerning vandalism states:

If any person, by any means whatever, shall wilfully or mischievously injure or destroy any of the burial vaults, urns, memorials, vases, foundations, bases or other similar items in a cemetery, or injure or destroy any of the work, materials, or furniture of any courthouse or jail, or other public building, or schoolhouse or church, or deface any of the walls or other parts thereof, or shall write, or make any drawings or character, or do any other act, either on or in said building or the walls thereof, or shall deface or injure the trees, fences, pavements, or soil, on the grounds belonging thereto, or an ornamental or shade tree on any public road or street leading thereto, such person, upon conviction, for such offense, shall be punished as follows:

(a) If the damage caused by the destruction or defacement of such property has a value of less than Three Hundred Dollars ($300.00), any person who is convicted of such offense shall be fined not more than One Thousand Dollars ($1,000.00) or be imprisoned in the county jail for not more than one (1) year, or both.

(b) If the damage caused by the destruction or defacement of such property has a value equal to or exceeding Three Hundred Dollars ($300.00), any person who is convicted of such offense shall be fined not more than Five Thousand Dollars ($5,000.00) or be imprisoned in the State Penitentiary for up to five (5) years, or both.

Miss. Code Ann. § 97-17-39 (Rev. 2006). Proposed jury instruction D-9, relating to vandalism, stated:

> The Court instructs the Jury that if you find that the State of Mississippi has proven to you from the evidence, beyond a reasonable doubt, that Tonnie Thomas attempted to set fire to or burn the Greenville City Jail as alleged in the indictment, but you further find that the State of Mississippi has failed to prove to you, from the evidence, beyond a reasonable doubt, that the value of the damage to the property of the Greenville City Jail or the City of Greenville was more than Three Hundred Dollars ($300.00) then you should find Tonnie Thomas guilty of the misdemeanor crime of **Attempted Arson of a Jail** and you should write your verdict on a separate sheet of paper and the form of your verdict shall be:
>
> "We, the Jury, find the Defendant guilty of the Misdemeanor Crime of Attempted Arson."

¶27. The trial court refused both instructions because there was no evidence of the value of the destroyed items. Defense counsel called Jones, a jailer, who testified that the mattress, blanket, and sheet were destroyed in the fire. The cell walls had to be cleaned, sanitized, and repainted after the fire. Whitehead, another jailer, proffered testimony about the repairs to the cell following the fire. However, Whitehead could not give a dollar amount for the repairs to the cell. When refusing the instructions, the trial court reasoned, in part:

> Well, I checked my notes and just to make sure that it's my understanding that when a lesser offense or a lesser-included offense, jury instruction [is] offered, that there has to be some way a jury can rationally determine, find that offense. And under the state of their testimony, I don't believe there is any way in the world that a jury can rationally find guilty or not guilty on either one of those, defacing city jail or malicious mischief, since we don't have any value.

¶28. Thomas argues that enough circumstantial evidence and testimony about the damage had been presented for the jury to infer the misdemeanor penalty for the cost of repairing the items to be less than $500 for malicious mischief and less than $300 for vandalism. He

13

claims that the malicious mischief and vandalism statutes do not require proof of value, rather the value only dictates whether the crime is a misdemeanor or felony. Thus, Thomas claims that he was entitled to a lesser-offense instruction, because the jury could have determined that Thomas was not guilty of attempting to burn the jail but guilty of a misdemeanor crime of either malicious mischief or vandalism based on the respective $500 or $300 threshold amount. An accused is entitled to a lesser-offense instruction only where there is an evidentiary basis in the record. *McGowan v. State*, 541 So. 2d 1027, 1028 (Miss. 1989).

¶29. Thomas argues that he was entitled to a lesser-offense instruction because there was an evidentiary basis for it in the record. This Court has stated that the evidentiary standard for lesser-offense instructions is the same as that for lesser-included-offense instructions. *Dampier v. State*, 973 So. 2d 221, 231 (Miss. 2008). "If a lesser offense, as opposed to a lesser-included offense, arises from the same operative facts and has an evidentiary basis, we have held the defendant is entitled to an instruction for the lesser charge the same as if it were a lesser-included charge." *Moore v. State,* 799 So. 2d 89, 91 (Miss. 2001) (citing *Griffin v. State*, 533 So. 2d 444, 447-48 (Miss. 1988)). Further, a lesser-included offense "is one in which all its essential ingredients are contained in the offense for which the accused is indicted, but not all of the essential ingredients of the indicted offense. An accused could not be guilty of the offense for which he is indicted without at the same time being guilty of the lesser-included offense." *Brazzle v. State*, 13 So. 3d 810, 815 (Miss. 2009) (quoting *Porter v. State*, 616 So. 2d 899, 909-10 (Miss. 1993) (Hawkins, J., specially concurring)). To be entitled to a lesser-included-offense instruction, "[i]n short, the defendant must point to

14

evidence in the record from which a jury reasonably could find the defendant not guilty of the crime with which the defendant is charged and at the same time find the defendant guilty of the 'lesser offense.'" *Id*. at 816 (citing *Dampier v. State*, 973 So. 2d 221, 231 (Miss. 2008)).

¶30.    The distinction between a lesser-included offense and a lesser offense (or lesser-related offense) additionally has been expressed by this Court as follows:

> Again we emphasize that it is always important to clearly delineate the difference between a lesser non-included offense and a lesser included offense. A lesser included offense requires that the elements of the greater offense contain the elements of the lesser offense.

*Green v. State*, 884 So. 2d 733, 737 (Miss. 2004). "On the other hand, a lesser non-included offense applies where there is evidentiary support that a defendant is guilty of a lesser charge arising from the same nucleus of operative facts." *Id*. (citing *Mease v. State*, 539 So. 2d 1324, 1329 (Miss. 1989)).

¶31.    We find no error in the refusal of jury instructions D-8 and D-9. The instructions were incorrect statements of law, and they lacked an evidentiary basis in the record. *McGowan*, 541 So. 2d at 1028. The record contains no evidence of the monetary value of the items destroyed or damage sustained in the jail by the fire. Indeed, Thomas contends that the elements of malicious mischief and vandalism do not require proof of value. We disagree. A review of both statutes, Sections 97-17-39 and 97-17-67, shows that both would require proof of monetary value in order to gain a conviction. *See* Miss. Code §§ 97-17-39, 97-17-67 (Rev. 2006). Notwithstanding this, the statute under which the State indicted Thomas, Section 97-17-9(1), has no required element of monetary value in order to convict.

15

*See* Miss. Code § 97-17-9(1) (Rev. 2006). Indeed, the statute provides that "[a]ny person who wilfully and maliciously attempts to set fire to or attempts to burn or to aid, counsel or procure the burning of any of the buildings or property mentioned in the foregoing sections . . . ." shall be guilty of arson in the fourth degree. There is no value component whatsoever to the essential element of fourth-degree arson, nor is there a distinction between a felony or misdemeanor violation as in the malicious mischief and vandalism statutes. The crime of fourth-degree arson results only in a felony conviction.

¶32. Even assuming arguendo that Thomas was entitled to a lesser-nonincluded-offense instruction, the trial court properly excluded D-8 and D-9 as incorrect statements of law. Instruction D-8 does not contain the essential monetary or value element for malicious mischief and would have peremptorily instructed the jury that the crime committed was a misdemeanor. Thomas was not entitled to such an instruction. Instruction D-9 provided for a misdemeanor crime of attempted arson, which incorporates language from the vandalism statute, however, there is no misdemeanor crime of attempted arson.

¶33. Thomas also argues that the trial court placed the burden of proof on the defense to prove the monetary value of the destroyed items and damage to the jail in order to justify a lesser-offense instruction. We disagree. The trial court stated:

> . . . So I'm not trying – I'm not shifting the burden of proof to the defense. I'm just saying that if there is nothing in the evidence to sustain the jury instructions, how can I grant – I guess that's what I'm saying.

Further, Thomas cites a number of Court of Appeals cases for the proposition that juries are permitted to infer the value of items based on evidence presented at trial. However, the cases cited by Thomas are distinguishable from the facts before this Court. At his trial, no

16

evidence was solicited as to the value of the items destroyed or the costs of repairs to the jail cell. In the cases Thomas cites for authority, the evidence showed a minimum of a quantifiable value of the goods either at the time of purchase or cost of replacement. *See Williams v. State*, 994 So. 2d 821, 825 (Miss. Ct. App. 2008) (Court of Appeals affirmed conviction for grand larceny where witness stated that the cost of the stolen items was approximately $500 to $550 and the court found that jury could reasonably infer that the rest of the tools had fair market value greater than $100, for a total of more than $250, the statutory minimum at that time); *Ezell v. State*, 956 So. 2d 315, 322 (Miss. Ct. App. 2006) (Court of Appeals affirmed two convictions for receiving stolen property in excess of $500, finding that evidence of value of motorcycle and trailer was based on purchase prices of $5,600 and $500 plus another trailer in trade, respectively, and finding that a "reasonable jury could have inferred that the motorcycle and trailer had market values in excess of $500 at the times of their knowing possession by Ezell"); *Smith v. State*, 881 So. 2d 908, 910-11 (Miss. Ct. App. 2004) (Court of Appeals affirmed a grand-larceny conviction finding that the prosecution did not present direct testimony on current value, however a witness "testified that he paid between three and four thousand dollars for the rims. Although this was not direct testimony of the value of the rims, we find that it circumstantially provided a basis from which the jury could infer that the rims were worth at least $250 because of the amount of the purchase price").

¶34. Thomas adds that the State never refuted that the cost of the repairs was less than $500. Thomas's argument on this point fails, because the plain language of the statute under

which he was indicted, Section 97-17-9(1), as previously quoted, has no element of value. Thus, the State had no obligation to prove the value of repairs or destroyed items.

¶35. As further support for his position, Thomas also contends that the State admitted in the motion to dismiss that the second indictment against him, pursuant to Section 97-19-7, was dismissed for an inability to prove the items destroyed had a value of more than twenty-five dollars. The prosecution explained that the charge had been dismissed because the indictment did not contain all the proof. Regardless of the reason for the dismissal of the indictment, the charge against Thomas, fourth-degree arson, has no value component. In other words, the value of destroyed property is not an element of arson in the fourth degree.

¶36. Thomas also claims that the trial court failed to consider the disparity in punishment between the principle charge, arson, a felony, and the lesser offense, a misdemeanor, especially in light of Thomas's eligibility as an habitual offender. *See Taylor v. State*, 577 So. 2d 381, 383 (Miss. 1991). However, as previously stated, the felony crime of arson in the fourth degree has no element of value, whereas both the felony and misdemeanor crimes of malicious mischief and vandalism have value as an element. No evidence was presented at trial concerning the value of the destroyed items or the repairs. This Court has held that a trial judge may refuse instructions where they are without proper foundation in the evidence of the case. *Young*, 891 So. 2d at 819-20. The trial court did not err by excluding jury instructions D-8 and D-9.

### III. Speedy Trial

¶37. Thomas argues that the State violated his right to speedy trial and that the charges against him should be dismissed.

¶38. A criminal defendant's right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *Hersick v. State*, 904 So. 2d 116, 121 (Miss. 2004). Article 3, Section 26 of the Mississippi Constitution provides a criminal defendant with a right to a speedy trial. *Id*.; *Price v. State*, 898 So. 2d 641, 647 (Miss. 2005). "Mississippi has also codified speedy trial guarantees to further protect the rights of defendants." *Price*, 898 So. 2d at 647; *see* Miss. Code Ann. § 99-17-1 (Rev. 2007).[1]

¶39. A claim for speedy trial turns on a question of fact: whether good cause was shown for the delay of the trial. *Flora v. State*, 925 So. 2d 797, 814 (Miss. 2006). "Under this Court's standard of review, this Court will uphold a decision based on substantial, credible evidence." *DeLoach v. State*, 722 So. 2d 512, 516 (Miss. 1998); *see also Flora v. State*, 925 So. 2d 797, 814 (Miss. 2006); *Price*, 898 So. 2d at 647. Ordinarily, this Court will reverse when there is no probative evidence to support a finding of good cause by the trial court. *Price*, 898 So. 2d at 647. With speedy-trial issues, the prosecution bears the burden of showing good cause and bears the risk of nonpersuasion. *Id*. (citing *DeLoach*, 722 So. 2d at 516).

¶40. The sole remedy for a constitutional speedy-trial violation, should this Court find one, is reversal of the trial court's decision and dismissal of charges against the defendant. *Price*, 898 So. 2d at 647.

¶41. In *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the United States Supreme Court provided a balancing test to assess whether a defendant's Sixth

---

[1] Thomas asserts his constitutional right to speedy trial. He does not assert a speedy-trial issue pursuant to statute. *See* Miss. Code Ann. § 99-17-1 (Rev. 2007).

19

Amendment right to a speedy trial has been violated. The four-prong test considers: (1) length of delay, (2) reason for the delay, (3) defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant. *Barker*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

¶42. When analyzing the *Barker* factors by conducting a balancing test, no magic or exacting application procedures are in place. *Price*, 898 So. 2d at 648. Rather, the quality of the evidence dictates the weight assessed to each factor and "in the absence of evidence, identification of the party with the risk of non-persuasion." *Id*. No factor alone is dispositive, especially given that the totality of the circumstances are considered in each case. *Id*.; *Poole v. State*, 826 So. 2d 1222, 1228-1229 (Miss. 2002). Additionally, the balancing process is not restricted to the *Barker* factors to the exclusion of other relevant circumstances. *Jefferson v. State*, 818 So. 2d 1099, 1106 (Miss. 2002).

**Length of delay**

¶43. When a constitutional speedy-trial claim is at issue, the delay is calculated from the date of the defendant's arrest. *Fleming*, 604 So. 2d at 299. This Court has held that a delay of eight months is presumptively prejudicial. *Smith v. State,* 550 So. 2d 406, 408 (Miss. 1989). This delay triggers the balancing of the other three *Barker* factors. *Hersick*, 904 So. 2d at 121; *Price*, 898 So. 2d at 647. Only when a delay is presumptively prejudicial will this Court engage in further analysis pursuant to *Barker*. *Hersick*, 904 So. 2d at 121 (citing *Barker*, 407 U.S. at 530).

20

¶44. Here, Thomas was arrested on March 3, 2007. His trial began on January 27, 2009. The length of the delay between his arrest and his trial was 696 days.[2] Except for one brief period when Thomas requested a continuance, the majority of the delay was attributable to the State.[3] Notwithstanding the one request for a continuance by Thomas, his trial was delayed well beyond the eight-month period considered presumptively prejudicial for issues of speedy trial, thus requiring additional analysis. *Poole*, 826 So. 2d at 1229 (citing *Smith*, 550 So. 2d at 408). The trial court determined that this factor weighed against the State.

**Reason for delay**

¶45. Any delay caused by a particular party will be assessed against that party. *Poole*, 826 So. 2d at 1229. Because the State bears the burden of providing a speedy trial, it must show either a delay caused by the defendant or good cause for the delay. *Hersick*, 904 So. 2d at 121. To the extent that the State demonstrates that the defendant caused the delay or that the State had no control over the delay, this factor does not weigh against it. *Fleming*, 604 So. 2d at 299. When the State is responsible for the delay, this factor weighs against it. *Id*. "[I]f

---

[2] The applicable timeline for Thomas was as follows:

| March 3, 2007 | arrest |
|---|---|
| April 2007 | first indictment |
| September 2007 | second indictment |
| June 13, 2008 | third indictment |
| June 26, 2008 | speedy trial demand |
| September 29, 2008 | motion to dismiss |
| October 8, 2008 | motion for continuance filed by Thomas |
| November 4, 2008 | continuance order granted |
| January 27, 2009 | trial |

[3] Defense counsel acknowledged a thirty-five to forty day delay on Thomas's part due to defense counsel's recent employment as Thomas's attorney.

the state deliberately causes a delay, the impediment weighs 'heavily' against the state" and "since the state bears the risk of nonpersuasion, even a 'neutral' reason for delay must weigh against the state, albeit lightly." *Id*.

¶46.    A hearing was conducted prior to trial on the speedy-trial issue.  Apart from one request for a continuance for a brief thirty-five to forty day period, no delay was attributable to Thomas.  The State explained that the delay occurred because of the need to reindict Thomas.  The State indicted Thomas three times for the fire under different statutes. Initially, Thomas was indicted in April 2007 with arson.  At the time that Thomas set fire to the jail, he was being detained on a murder charge and an unrelated arson charge.  Due to evidentiary concerns, the State reindicted Thomas for third-degree arson in September 2007, and later reindicted him in June 2008 for fourth-degree arson.  During this time period, Thomas was incarcerated in the jail on other, unrelated charges and was tried and convicted of those other charges prior to the trial at issue,on fourth-degree arson.  Also while detained in the jail, Thomas later was charged with assault against a law-enforcement officer.  The State attributed the delay to negligence and not to an intentional delay on its part.  The trial court determined that the State showed good cause, because it attempted to proceed in a timely manner, however, it had difficulty in conforming the indictment to the evidence.  The trial court did not weigh this factor against the State.

**Thomas's assertion of his right to speedy trial**

¶47.    "A defendant 'has no duty to bring himself to trial . . . .' Still he gains far more points under this prong of the *Barker* test where he has demanded a speedy trial." *Jefferson*, 818 So. 2d at 1107-1108 (quoting *Brengettcy v. State*, 794 So. 2d 987, 994 (Miss. 2001)).

¶48. Thomas asserted his right to speedy trial on June 26, 2008, shortly after the third and final indictment in his case. He subsequently filed a motion to dismiss, raising the speedy-trial issue through counsel on September 29, 2008. The trial court weighed this factor in favor of Thomas.

### Prejudice to Thomas

¶49. When analyzing the prejudice prong under *Barker*, this Court considers: (1) the "actual prejudice to the accused in defending his case, and (2) interference with the defendant's liberty." *Brengettcy*, 794 So. 2d at 994 (quoting *Perry v. State*, 637 So. 2d 871, 876 (Miss. 1994)). This Court considers three interests when analyzing whether a defendant has suffered prejudice for a lengthy delay in the speedy-trial context: "(1) preventing 'oppressive pretrial incarceration;' (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Id*. (citing *Barker*, 407 U.S. at 532). This Court has found no speedy-trial violation where a defendant was not tried, in part, due to the fact that he was being tried for other crimes. *Saucier v. State*, 259 So. 2d 484, 486 (Miss. 1972); *see also Brengettcy*, 794 So. 2d at 994-995 ("Brengettcy indicates that, while awaiting trial, he was already incarcerated on an unrelated charge. Obviously, if Brengettcy was already in jail on unrelated charges, any prejudice that could have arisen merely from interference with his liberty is alleviated.")

¶50. Thomas argues that one of the three prejudice factors weighs in his favor. This factor is the minimization of anxiety and concern of the accused. Because Thomas was facing the possibility of a life sentence without parole, he claims that the delay in trial caused anxiety and concern, and the trial court erred by finding for the State on this *Barker* factor.

23

¶51.   During the hearing on the motion to dismiss, the prosecution made the trial court aware that, when Thomas was arrested on March 3, 2007, for setting fire to the jail, he already was being detained in the Greenville City Jail on separate charges of murder and arson.  When Thomas was arrested on the murder and arson charges, the trial court set a $200,000 bond on those charges, however, Thomas did not post bond.  While incarcerated on the murder and unrelated arson charges, Thomas was charged with fourth-degree arson, now subject to this Court's analysis, and a later charge of assault on a law-enforcement officer.  Therefore, it was the State's position that Thomas never had any restraints on his liberty due to the fourth-degree-arson charge because he already was being held on other charges at the time of the fourth-degree arson, for which he never posted bond.  In other words, Thomas was sitting in jail on other charges, regardless of the fourth-degree-arson charge.  In addition, Thomas was tried and convicted on the murder charge and sentenced to life in prison without the possibility of parole while awaiting trial on the fourth-degree-arson charge.  Furthermore, the State argues that it was difficult, if not impossible, to differentiate any anxiety that Thomas may have had concerning the delay in his fourth-degree-arson charge and possible life sentence without parole because he was facing a murder charge at the same time.  Incidently, the State pointed out that Thomas was convicted of murder and sentenced to life imprisonment without the possibility of parole on the murder charge in the intervening time period.

¶52.   Thomas did not argue, and there was no showing that he suffered any prejudice in being able to defend his case.  Indeed, the witnesses were mainly jail staff, law-enforcement

24

officers, and fire-department personnel. There was no claim that Thomas was unable to defend his case. The trial court weighed this factor in favor of the State.

¶53. The trial court did not err iny denying Thomas's motion to dismiss based on an alleged speedy-trial violation. This Court looks at the totality of the circumstances, and no factor alone is dispositive. *Price*, 898 So. 2d at 648; *Poole v. State*, 826 So. 2d 1222, 1228-1229 (Miss. 2002). Further, the balancing process is not restricted to the *Barker* factors to the exclusion of other relevant circumstances. *Jefferson*, 818 So. 2d at 1106. Thomas's trial was delayed more than twenty-two months from the time of arrest in March 2007 until the trial in January 2009. This factor, length of delay, was in favor of Thomas because the delay was well beyond the eight-month period, which demonstrates a presumptive delay. Additionally, the reason for delay also weighs in favor of Thomas, although lightly. This Court has stated that even a neutral reason weighs against the State, although it is lightly weighed. *Fleming*, 604 So. 2d at 299. While the State did not intentionally delay Thomas's trial, it admittedly had trouble indicting Thomas correctly. Therefore, the trial court erred by finding this factor in favor of the State. As for the third factor, the assertion of the right to speedy trial, the trial court correctly determined that his factor weighed in favor of Thomas. The trial court correctly determined that the fourth *Barker* factor, prejudice to Thomas, weighed in favor of the State. Due to the unusual circumstances surrounding Thomas's incarceration, including (1) his detention and failure to post bond on other charges at the time of his fourth-degree-arson arrest, and (2) his subsequent trial and conviction of life without the possibility of parole on his murder charge while awaiting trial on the fourth-degree-arson charge, Thomas suffered no prejudice to his

25

liberty. He also suffered no prejudice to his criminal defense. While Thomas contended that he suffered prejudice in the form of anxiety and concern for his potential conviction and sentence, pursuant to the second prejudice factor, we agree with the State that it is nearly impossible to discern whether Thomas had anxiety for his fourth-degree-arson charge when he also faced murder charges. Thus, the trial court correctly found that the fourth factor weighed in favor of the State.

¶54. Considering the totality of the circumstances, this Court finds that no speedy-trial violation occurred. While Thomas had a presumptive delay in his trial that, at a minimum, was due to the State re-indicting Thomas several times, the State had no deliberate reason to cause the delay. Further, Thomas timely asserted his right to speedy trial. However, Thomas was not prejudiced either by actual prejudice or by loss of liberty by the delay. Therefore, the trial court did not err finding no violation of Thomas's Sixth Amendment right to speedy trial.

### IV. Disproportionality

¶55. Thomas asserts that his sentence of life without parole as an habitual offender was grossly disproportionate to his crime. He claims that the trial court's sentence of life without parole for essentially what he characterizes as a misdemeanor crime of burning a sheet, blanket, and mattress, was cruel and unusual punishment pursuant to the Eighth Amendment of the Constitution of the United States. He also argues that the trial court erred by finding no inference of gross disproportionality, and thereby failing to conduct a proportionality analysis.

26

¶56. "Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." *Isom v. State*, 928 So. 2d 840, 850 (Miss. 2006) (quoting *Wall v. State*, 718 So. 2d 1107, 1114 (Miss. 1998)). The general rule in Mississippi is that this Court will not disturb a sentence that does not exceed the maximum term allowed by the statute. *Id*. (citing *Fleming v. State*, 604 So. 2d 280, 302 (Miss.1992)). "[T]his Court will review a sentence that allegedly imposed a penalty that is disproportionate to the crime." *Id*.

¶57. In *Solem v Helm*, the United States Supreme Court provided the following three-prong test for an Eighth Amendment proportionality analysis:

> (I) the gravity of the offense and the harshness of the penalty;
> (ii) the sentence imposed on other criminals in the same jurisdiction; and
> (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Nichols v. State*, 826 So. 2d at 1290 (citing *Solem v. Helm*, 463 U.S. 277, 290-92, 103 S. Ct. 3001, 3010-11, 77 L. Ed. 2d 637 (1983)).

¶58. "We review sentences in light of the factors articulated by the United States Supreme Court in *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983), only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality.'" *Johnson v. State*, 950 So. 2d 178, 183 (Miss. 2007) (citing *Nichols v. State*, 826 So. 2d 1288, 1290 (Miss. 2002)); *see also* *Hughes v. State*, 983 So. 2d 270, 284 (Miss. 2008).

¶59. In *Sumrell v. State*, 972 So. 2d 572, 576 (Miss. 2008) (quoting *Edwards v. State*, 800 So. 2d 454, 469 (Miss. 2001)), this Court stated:

> This Court noted, however, that ***Solem*** was overruled in ***Harmelin v. Michigan***, 501 U.S. 957, 965-66, 111 S. Ct. 2680, 2686-87, 115 L. Ed. 2d 836 (1991) "to the extent that it found a guarantee of proportionality in the Eighth Amendment. In light of ***Harmelin***, it appears that ***Solem*** is to apply only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality.'" ***Hoops v. State***, 681 So. 2d at 538 (citations omitted). The appellate courts will not apply the three-prong disproportionality test when there is a lack of this initial showing. ***Young v. State***, 731 So. 2d 1120, 1125 (Miss. 1999); ***Williams v. State***, 784 So. 2d 230, 236 (Miss. Ct. App. 2000).

***Sumrell***, 972 So. 2d at 576 (quoting ***Edwards***, 800 So. 2d at 469). Generally, sentences that do not exceed the maximum term allowed by statute will not be considered grossly disproportionate and will not be disturbed on appeal. ***Mingo v. State***, 944 So. 2d 18, 34 (Miss. 2006) (citing ***Fleming v. State***, 604 So. 2d 280, 302-03 (Miss. 1992)).

¶60. Thomas was indicted pursuant to Mississippi Code Section 97-17-9(1), which provides:

> Any person who wilfully and maliciously attempts to set fire to or attempts to burn or to aid, counsel or procure the burning of any of the buildings or property mentioned in the foregoing sections, or who commits any act preliminary thereto, or in furtherance thereof, shall be guilty of arson in the fourth degree and upon conviction thereof be sentenced to the penitentiary for not less than one nor more than two years or fined not to exceed one thousand dollars.

Miss. Code Ann. § 97-17-9(1) (Rev. 2006). The maximum sentence for fourth-degree arson is two years. Miss. Code Ann. § 97-17-9(1). However, Thomas also was sentenced as an habitual offender pursuant to Section 99-19-83, which provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence

28

shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-83 (Rev. 2007). At the sentencing hearing, the evidence presented showed that Thomas met the criteria to be determined to be an habitual offender. Gloria Gibbs, a correctional records technician with the MDOC, testified about Thomas's prior felony convictions. The trial court sentencing order stated, in part:

> Having heard the evidence presented and the argument of counsel this Court hereby finds that the Defendant, TONNIE L. THOMAS, was convicted on or about October 13, 1992, in Washington County Cause no. 22,679 for the crimes of Count II - Simple Assault on a Law Enforcement Officer and sentenced to five (5) years, for Count III - Aggravated Assault and sentenced to ten (10) years, and for Count IV - Escape and was sentenced to one (1) year; and on or about May 3, 2001, in Washington County Cause No. CR-99-00798 for the crime of Possession of a [F]irearm by a Convicted Felon and sentenced to six (6) months; and on or about August 9, 2001, in Washington County Cause No. CR-2001-200 for the Crime of Count II - Possession of a Firearm by a Felon and sentenced to three (3) years; and on or about November 15, 2002, in Greene County Cause No. 21-01-10-15 for the Crime of Simple Assault on a Peace Officer and sentenced to two (2) years; and said charges being separately brought and arising out of separate incidents at different times and that this Defendant has been sentenced to and has serve[d] separate terms of one (1) or more years in a state penal institution, and finding that Aggravated Assault is a violent crime. As such, this Court hereby finds that TONNIE L. THOMAS is in fact an habitual offender.

At the sentencing hearing, the testimony showed that in 1992, Thomas was sentenced to ten years for aggravated assault, five years for simple assault, and one year for escape. He served a total of five years and 298 days for those three crimes. Thomas also was sentenced for two convictions as a felon in possession of firearms and one conviction of simple assault of a police officer. He was in custody for those crimes for five years and six months.

¶61. Based on Thomas's extensive criminal background and at least one prior violent felony of aggravated assault, the trial court sentenced Thomas to life in prison without parole.

However, Thomas had a long history of being a repeat offender. In *Ewing v. California*, 538 U.S. 11, 29, 123 S. Ct. 1179, 1189-90, 155 L. Ed. 2d 108 (2003), the United States Supreme Court upheld consideration of the current crime with regard to prior criminal behavior when determining proper sentencing for the current criminal conviction and stated that "[i]n weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism." The *Ewing* Court also held that "Ewing's sentence is justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by his own long, serious criminal record." *Ewing v. California*, 538 U.S. 11, 29-30, 123 S. Ct. 1179, 1190, 155 L. Ed. 2d 108 (2003). Thomas's sentence did not exceed the maximum term allowed by statute and thus was not grossly disproportionate. *Mingo v. State*, 944 So. 2d 18, 34 (Miss. 2006) (citing *Fleming v. State*, 604 So. 2d 280, 302-03 (Miss. 1992)); *Isom v. State*, 928 So. 2d at 850. The trial court properly considered both Thomas's past criminal history and his current conviction of fourth-degree arson during sentencing. *See Ewing*, 538 U.S. at 29-30, 123 S. Ct. at 1190; *Miles v. State*, 864 So. 2d 963, 969 (Miss. Ct. App. 2003). Because Thomas made no initial showing that his sentence was grossly disproportionate to the crime, the trial court did not err by conducting no further *Solem* analysis. *Solem v. Helm*, 463 U.S. at 290-92, 103 S. Ct. at 3010-11. We find no merit to Thomas's argument that his sentence is violative of the Eighth Amendment's ban on cruel and unusual punishment.

## CONCLUSION

¶62.    For the reasons stated, this Court affirms the jury verdict and sentencing of the Circuit Court of Washington County.

30

¶63. **CONVICTION OF FOURTH-DEGREE ARSON AND SENTENCE OF LIFE IMPRISONMENT, AS AN HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION, AFFIRMED**.

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J., AND DICKINSON, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶64. Without citation to any authority, the majority holds that proof regarding the value of the damaged or destroyed property was required in order for Thomas to have been entitled to a jury instruction regarding malicious mischief. This is contrary to our established case law; and, because the denial of Thomas's instruction denied him due process of law, I respectfully dissent.

¶65. "From the very term 'property' the law infers some value." *Ill. Cent. R.R. Co. v. State*, 94 Miss. 759, 48 So. 561, 562 (1909). Thus, when a defendant is charged with a crime against property, and the value of the damage to that property dictates whether the offense is a misdemeanor or a felony, it is not necessary for the State to have proven the value of the damage in support of the lesser offense if the evidence is sufficient to show that property suffered some damage. *Henley v. State*, 729 So. 2d 232, 238-39 (Miss. 1998). *See also Williams v. State*, 763 So. 2d 186, 189 (Miss. Ct. App. 2000); *Rogers v. State*, 920 So. 2d 550, 551-52 (Miss. Ct. App. 2006).

¶66. In *Henley*, the defendant was convicted of grand larceny for stealing a truck in violation of Mississippi Code Section 97-17-41 (1994), which provided, "[e]very person who shall be convicted of taking and carrying away, feloniously, the personal property of another,

31

of the value of Two Hundred Fifty Dollars ($250.00) or more, shall be guilty of grand larceny." ***Henley***, 729 So. 2d at 238.  Henley appealed on the ground that there was a lack of evidence to establish the value of the truck, and therefore, his conviction for grand larceny could not stand.  ***Id.***  We agreed and found there was "simply no evidence in the record as to the value of the truck."  But because Henley admitted stealing the truck, there was sufficient evidence to support a conviction of petit larceny under Mississippi Code Section 97-17-43 (1994), which provided, in pertinent part, "[i]f any person shall feloniously take, steal and carry away any personal property of another *under* the value of Two Hundred Fifty Dollars ($250.00), he shall be guilty of petit larceny."  ***Id.*** (emphasis added).  In reaching this conclusion, we found that "[w]ithout any evidence as to the value of the truck, the State has failed to meet its burden of proof as to one of the elements of *grand* larceny and conviction of same cannot be upheld."  ***Id.*** at 238 (emphasis added).  Even though the petit larceny statute contained a value element as well, we did not require the State to prove the value because Henley admitted stealing the truck.  ***Id.*** at 239.  In effect, this Court recognized a presumption that all personal property has *some* value.  Hence, all that was required for the lesser offense was proof that the personalty was stolen by the accused.  ***Id.***

¶67.    Here, the lower court's conclusion that there was not enough evidence to show that the value of the fire damage was *below* $500 is a misinterpretation of applicable law.  In ***Henley***, the State was not required to prove that the value of the truck was under $250, only that the truck was stolen from its owner by the accused.  Thus, in crimes against property with a value-based dividing point between misdemeanor and felony, when no value is proven, a felony conviction is precluded.  But, if all other elements of the crime are

32

sufficiently proven, the accused may be convicted of a lesser-included, or lesser-related, misdemeanor.

¶68.    Thomas sought a jury instruction on misdemeanor malicious mischief. The malicious mischief statute in effect at the time stated in part, "(1) Every person who shall maliciously or mischievously destroy, disfigure, or injure . . . any property of another . . . shall be guilty of malicious mischief. (2) If the value of the property destroyed . . . is Five Hundred Dollars ($500.00) or *less*, it shall be a misdemeanor."  Miss. Code. Ann. § 97-17-67 (2003) (emphasis added).  Contrary to the majority's conclusion otherwise, under this statute, a person need only maliciously or mischievously cause damage to another's property to be convicted of misdemeanor malicious mischief.  Because it is clear from the evidence that the fire did cause *some* property damage, there was, in this case, a sufficient evidentiary basis for the trial court to have granted Thomas's request for a lesser-related offense instruction on misdemeanor malicious mischief.

¶69.    Thomas sought to give the jury the option of convicting him of misdemeanor malicious mischief, basing his defense on the theory that he did not intend to burn the jail building, but meant merely to burn the bed sheets he had woven through the steel bars of his concrete cell.  By denying instruction D-8, or some modified version of it,  the trial judge left the jury with but two options: convicting Thomas of fourth degree arson or acquitting him. Thomas was thus foreclosed from presenting his theory of the case to the trier of fact.

¶70.    In *Keeble v. U.S.*, 412 U.S. 205, 212-13, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1974), the United States Supreme Court addressed a similar situation:

[I]f the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction – in this context or any other – precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction. . . . Indeed, while we have never explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a defendant to have the jury instructed on a lesser offense, it is nevertheless clear that a construction of the Major Crimes Act to preclude such an instruction would raise difficult constitutional questions.

¶71.    Keeble was convicted of assault with intent to inflict great bodily injury after denial of his request to have the jury instructed that they might convict him of simple assault. *Id.*, 412 U.S. at 206.  Intent to commit serious bodily injury was a necessary element of the crime with which Keeble was charged, but not of the lesser crime of simple assault. *Id.* at 213.  The Supreme Court found that the nature of Keeble's intent was "very much in dispute at trial," and that "the jury could rationally have convicted him of simple assault if that option had been presented." *Id.*  However, "the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright." *Id.*  The Supreme Court found Keeble could not be deprived of the "protection afforded by an instruction on a lesser included offense, assuming of course that the evidence warrants such an instruction," and reversed and remanded. *Id.* at 214.

¶72.    Likewise, Thomas should not have been deprived of the protection afforded by his proffered instruction on the lesser-related offense of malicious mischief, inasmuch as proof that Thomas had, in fact, committed that offense is easily found in the record.  As *Keeble* makes clear, the very purpose of jury instructions is rooted in the right to a fair trial as

34

guaranteed by the federal and state constitutional provisions that ensure that no person be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V; Miss. Const. art. 3, § 14.  For this reason, we repeatedly have held that a defendant is entitled to have the trial court instruct the jury regarding his or her theory of the case. *See, e.g.,  Smith v. State*, 802 So. 2d 82, 88 (Miss. 2001) (citations omitted).  Because the trial court's failure to provide the jury a proper instruction on the lesser-related offense of misdemeanor malicious mischief prevented Thomas from presenting his theory of the case to the jury, I would reverse and remand for a new trial in accordance with this opinion.

**GRAVES, P.J., AND DICKINSON, J., JOIN THIS OPINION.**