FAIRLEY *v.* STATE.

(In Banc. Dec. 7, 1931.)

[138 So. 330. No. 29634.]

G. H. Merrell, of Collins, for appellant.

Geo. T. Mitchell, Attorney-General, and Eugene B. Ethridge, Special Agent, of Jackson, for the state.

Cook, J., delivered the opinion of the court.

At the July, 1931, term of the circuit court of Covington county, the appellant, Guy Fairley, and his son-in-law, William Fairley, were jointly indicted for the murder of H. L. Everett. Upon proper motions a severance was granted, and thereupon an agreed verdict and judgment of guilty as charged with imprisonment for life in the state penitentiary was entered against William Fairley, and the appellant was placed upon trial and was convicted and sentenced to be hanged, and from this conviction and sentence this appeal was prosecuted.

Other than some testimony as to previous good character, the appellant offered no evidence. The evidence

offered by the state, circumstantial and direct, established, beyond any reasonable doubt, that the appellant was guilty of an atrocious murder, deliberately planned and executed, and, although the sufficiency of the evidence is not challenged by any of the assignments of error, we think a brief outline thereof should be given.

Some months prior to his death on May 2, 1931, H. L. Everett, a federal prohibition enforcement officer, who resided in Jackson, Mississippi, reported the appellant for a violation of the liquor laws, and, upon an indictment returned at the February term of the United States district court at Biloxi, he was arrested. On the morning of May 2, 1931, Everett left Gulfport in a Ford automobile traveling north on United States highway No. 49. When he reached a point on this highway just north of Maxie, Mississippi, he came upon a wrecked automobile in which there were two people who were seriously injured, and in which he discovered a quantity of intoxicating liquor. He stopped at the scene of the wreck and destroyed the liquor, and assisted in caring for the injured persons, and, while he was so engaged, the appellant and William Fairley drove up to the scene of the wrecked car and stopped, and remained there until the injured were removed and Everett had driven north. The two Fairleys then entered their automobile and followed Everett to Brooklyn, Mississippi. At that place, Everett arranged for a wrecker to go to the scene of the wreck and move the damaged car to Brooklyn. While Everett was delayed at Brooklyn, the two Fairleys loitered around town, and, when he proceeded north toward Jackson, they immediately followed. Upon arriving at a gasoline station in the northern part of the city of Hattiesburg, Everett stopped, and the Fairleys drove by him and stopped at a drug store one block north of the filling station. There they waited until Everett made purchases at the filling station and at a store just across the street therefrom, and until he had passed them on his journey

north on United States highway No. 49, when they followed. At a point north of Seminary, about a half mile south of the place where the body of Everett was found, two cars were observed traveling north on the highway, one immediately behind the other. A few moments thereafter the witnesses who observed these cars heard two gunshots, and a short while later, or about twelve-thirty p. m., Everett's car was discovered by the side of the road in a creek. Everett's body, with two loads of buckshot in the left side of his neck and face, was found in the car. Later in the afternoon the Fairleys were seen traveling south towards Seminary on another highway. Shortly after the killing, two empty shells and a Remington automatic shotgun were found near the roadside a short distance north of the point where the body of Everett was found. These shells and the shotgun were offered in evidence; the gun being fully identified by the then owner thereof, and by its prior owners who lived near the appellant, and by a witness who loaned the gun to the appellant a short while before the killing.

All of the facts stated above were testified to by witnesses other than William Fairley, who was indicted jointly with the appellant. William Fairley was offered as a witness by the state, and he gave a full and complete disclosure of the facts leading up to the killing, which corroborated the testimony of the other witnesses in all material respects.

The testimony of William Fairley was substantially as follows: He is a son-in-law of the appellant, and for some time prior to the death of Everett he lived in the appellant's home, which was located on United States highway No. 49, at or near Maxie, Mississippi. The appellant had become incensed at Everett for reporting him and other members of his family for violations of the liquor laws, and for some time prior to the killing plans for killing Everett had been discussed in the family. On the morning of May 2, 1931, some member of the family

reported to the appellant that Everett had passed, driving north on United States highway No. 49. Immediately he instructed the witness to proceed to the home of a neighbor for the purpose of hiring an automobile to pursue Everett. Arrangements for the car were consummated, the shotgun, which was afterwards introduced in evidence, was placed in the automobile by the witness, and he and the appellant proceeded north in pursuit of Everett. As to their movements from that place to a point just north of Seminary, Mississippi, the witness' testimony coincided with that of the other witnesses whose testimony is outlined above. The witness Fairley further testified that when they reached a point just north of Seminary the appellant, who was driving the automobile in which they were riding, stopped it and requested the witness to take the wheel; that they then speeded up and again brought Everett's car within their view; that, upon reaching a long straight stretch of road, the appellant instructed him to pass the car they were pursuing, and thereupon climbed on the rear seat and took up the shotgun, and, as he drove by Everett's car, appellant fired twice at Everett; that a short distance further along the road the appellant first threw out the shells and then threw the gun into a creek; and that they then proceeded through Collins on to Laurel, Hattiesburg, and Maxie, and arrived at their home about four p. m. This witness also identified the gun that was found on the roadside near the scene of the killing as being the gun with which the appellant fired the fatal shot.

Upon arraignment in the court below, the appellant filed a motion to quash the indictment, alleging as grounds of the motion, first, that the indictment shows on its face that it was returned at the "July term A. D. 1931," while the date of the filing of the indictment as entered thereon by the clerk of the court was "six day of July, 1921;" and, second, that the indictment was signed by a district attorney pro tem, instead of the reg-

ularly elected and qualified district attorney of the circuit court district. Upon the hearing of this motion, testimony was offered, and the court directed the clerk to correct the filing date appearing on the indictment so as to show that it was filed on the 6th day of July, 1931, and thereupon overruled the motion to quash; and the appellant assigns as error the action of the court in so doing.

Upon the hearing of this motion, the original indictment showing a filing date of July 6, 1921, and the copy thereof appearing in the secret record of indictments on file in the circuit clerk's office, showing the filing date to be the 6th day of July, 1931, were offered in evidence; and the circuit clerk testified that the indictment was returned at the July, 1931, term of the court, and that the marking thereof as being filed on the 6th day of July, 1921, was a mere clerical error on his part, caused by the use of an old form on which there was printed at the place provided for the entry of the date of filing, the figures "192—," and that, when he inserted the figure "1" in this blank space, he inadvertently failed to strike the "2" and insert a "3," so as to show the correct filing date to be the 6th day of July, 1931. The original indictment shows on its face that it was found at the July term, A. D. 1931 of the circuit court of Covington county, and charges that the alleged crime was committed on or about "the second day of May, A. D. 1931."

In support of his contention that the date of filing as the same appears on the indictment is conclusive legal evidence of the finding and presentation of the indictment, the appellant relies upon the case of Stanford v. State, 76 Miss. 257, 24 So. 536, wherein the indictment was not marked "filed" at or during the term at which it was returned, and the court held that it could not be filed at a subsequent term, saying that: "The 'marking' the indictment 'filed,' dating it, and signing the entries on it, by the clerk, are made by section 1346 of the Code

of 1892 the exclusive 'legal evidence of the finding and presentation of the indictment.' This was not done in this case at the term at which the alleged indictment was found."

In the later case of Washington v. State, 78 Miss. 189, 28 So. 850, where the defendant was put to trial upon an indictment at the same term of court at which it was returned, but which had not been marked "filed," and the clerk was permitted to file it during the closing argument of defendant's counsel, the court said in reference to the Stanford case, supra: "That case, which we approve, is put expressly on the ground that the filing was done at a subsequent term. Here the statutory custodian of the indictment, the clerk, at the same term, did his duty in supplying the omission, and this was done before argument closed, and without objection interposed by the defendant." So we say in the case at bar that the statutory custodian of the indictment, the clerk, at the same term at which the indictment was returned, did his duty in correcting the manifest clerical error in the date of filing the indictment, and that this was done over the objection of the appellant is of no consequence.

The statute, section 1198, Code 1930, requires that all indictments presented to the court by the grand jury "must be marked 'filed,' . . . by the clerk," but it is not necessary that the dating, signing, and filing by the clerk shall be done in the presence of the grand jury. It was the right and duty of the clerk at any time during the term in which the indictment was returned to correct any manifest error or omission in the filing of the indictment; and an order of the court entered on the minutes was not necessary to authorize him so to do.

The appellant next contends that the indictment was void and should have been quashed because it was signed by a district attorney pro tem. rather than the regularly elected and qualified district attorney of the judicial district. Upon the convening of the term of court at

which the indictment was returned, the court entered an order reciting that, "it being made known to the court, after the impaneling of the grand jurors, that for certain reasons the Hon. R. C. Russell, the regularly elected, commissioned, and acting district attorney, is disqualified to perform the duties of the said office, and that Toxey Hall, a duly licensed, acting, and qualified attorney at law, is qualified to act for the state as district attorney in the place of the Hon. R. C. Russell during the inability and disqualification of the said R. C. Russell," and appointing the said Toxey Hall to act as district attorney pro tem. during the disqualification of the regular district attorney. After this appointment the said Toxey Hall took the oath of office, and entered upon the discharge of the duties of the office, and, during his service, the indictment in the case at bar was prepared and signed by him and returned into court by the grand jury. Upon this point the appellant presents two contentions: First, that the regular district attorney was not, in fact, disqualified; and, second, that Toxey Hall was disqualified to act as district attorney pro tem. for the reason that he was the duly elected and qualified district attorney of another judicial district. The proof offered at the hearing of the motion to quash shows that the wife of the deceased, H. L. Everett, was a niece of the district attorney, R. C. Russell, and if it be conceded that he was not legally disqualified by reason of this relationship, it was a manifestation of proper regard for propriety for him to recuse himself and take no part in the investigation of the killing. Section 4367, Code 1930, provides for the appointment of district attorneys pro tem. in the following language: "If at the time of impaneling the grand jury in any circuit court, the district attorney be absent or unable to perform his duties, or if after impaneling of the grand jury, the district attorney be absent or unable to perform his duties or be disqualified, the court shall forthwith appoint some attorney at law

to act for the state in the place of the district attorney during this absence or inability or disqualification, and the person appointed shall have the power to discharge all the duties of the office during the absence or inability or disqualification of the district attorney. . . ."

The court below, acting under the authority of this section, held that the district attorney was disqualified to perform the duties of the office, and so adjudged by an order entered on the minutes of the court. The appellant had no right to demand that any prosecution against him be conducted by any particular person; he was only entitled to a fair and impartial trial conducted by a duly qualified district attorney, and it does not appear that he was in any wise prejudiced by the fact that the indictment returned against him was signed by a duly appointed and acting district attorney pro tem.

There is likewise no merit in the contention that the aforesaid Toxey Hall, a duly licensed attorney at law, was disqualified to act as district attorney pro tem. by reason of the fact that he was the regularly elected and qualified district attorney of another circuit court district. The statute simply requires that the person appointed shall be an attorney at law, and the fact that the person appointed was the district attorney of an adjoining circuit court district did not disqualify him from acting as district attorney pro tem. in the investigation of the alleged crime and the preparation and return of the indictment charging the appellant with the commission thereof.

Finally, the appellant complains of the fact that the court below reserved its rulings on objections to certain evidence offered by the state, until the conclusion of the state's evidence, and thereupon overruled the objections. Upon the offering of certain evidence, and particularly the shotgun which was found on the roadside near the scene of the killing, the appellant interposed objections on the ground that he was not shown to have had any

connection therewith. Upon the promise of the state's attorneys to later connect this evidence with the appellant, the court reserved rulings on this proferred evidence. By the testimony of Walter Fairley, the appellant was directly connected with the evidence to which the objections were interposed, and at the conclusion of the testimony of this witness, the court overruled the objections from which rulings had been reserved, and in so doing no error was committed. None of the instructions are complained of, the evidence abundantly supports the verdict, and there is no reversible error in the record. Consequently the judgment of the court below will be affirmed, and Friday January 8, 1932, is fixed as the date for the execution of the sentence.

Affirmed, and Friday January 8, 1932, fixed as the date of execution.