# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00094-COA

JOE JOHNSON A/K/A JOE JUNIOR JOHNSON
A/K/A JOE J. JOHNSON A/K/A JOE JOHNSON,
JR.                                                          APPELLANT

v.

STATE OF MISSISSIPPI                                         APPELLEE


DATE OF JUDGMENT:              12/23/2013
TRIAL JUDGE:                   HON. ROBERT B. HELFRICH
COURT FROM WHICH APPEALED:     FORREST COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                               BY: GEORGE T. HOLMES
                                    MOLLIE MARIE MCMILLIN
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: SCOTT STUART
DISTRICT ATTORNEY:             PATRICIA A. THOMAS BURCHELL
NATURE OF THE CASE:            CRIMINAL - FELONY
TRIAL COURT DISPOSITION:       CONVICTED OF ARMED ROBBERY AND
                               SENTENCED TO TWENTY-FIVE YEARS IN
                               THE CUSTODY OF THE MISSISSIPPI
                               DEPARTMENT OF CORRECTIONS, WITH
                               FIVE YEARS SUSPENDED AND FIVE
                               YEARS OF POST-RELEASE SUPERVISION;
                               AND TO PAY A FINE OF $2,500, $250 IN
                               RESTITUTION TO THE FORREST
                               COUNTY PUBLIC DEFENDER'S FUND,
                               AND $100 TO THE MISSISSIPPI CRIME
                               VICTIMS' COMPENSATION FUND
DISPOSITION:                   AFFIRMED - 09/15/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


    BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.

    WILSON, J., FOR THE COURT:

¶1.     A jury in the Forrest County Circuit Court convicted Joe Johnson of armed robbery, and the court sentenced him to twenty-five years in the custody of the Mississippi Department of Corrections, with five years suspended and five years of post-release supervision. Johnson filed a motion for a judgment notwithstanding the verdict or a new trial, which was denied, and he appealed. The Office of the State Public Defender, Indigent Appeals Division, filed a *Lindsey* brief certifying that there are no arguable claims to be raised on appeal.[1]   Johnson subsequently filed a pro se brief alleging (1) ineffective assistance of trial counsel, (2) ineffective assistance of appellate counsel (for filing the *Lindsey* brief), and (3) that his cross-examination of one witness was unfairly limited. Finding no error, we affirm.

## FACTS

¶2.     On the morning of March 1, 2013, Joseph Daly, a seventy-eight-year-old retiree, went to Regions Bank in Petal before it opened and waited in line outside with several other customers. When the bank opened, Daly withdrew approximately $2,600 from his account. Daly customarily made such a withdrawal around the first of the month that he would use to pay his mortgage and other bills and expenses during the month. Daly left the bank with an envelope containing his money and drove to the post office a few blocks away, where he removed about $450 for a money order to pay his mortgage and put the envelope with the rest of his money under his seat. Daly went inside the post office, purchased his money order, mailed his mortgage payment, and returned to his car.

---

[1] *See Lindsey v. State*, 939 So. 2d 743 (Miss. 2005).

¶3. When Daly sat back down in his car, a man put a gun through Daly's open car window, pointed it at Daly's chest, and demanded, "Give me your money." Daly quickly handed over the money he was holding in his hand, but the robber then told Daly to give him the rest of the money from under the seat, apparently having observed Daly place it there. Daly complied. Daly told police that the robber had flashed what appeared to be a police badge and was carrying a silver and black handgun. The robber also took Daly's wallet, looked at his driver's license, and threatened that he knew where Daly lived if Daly said anything. The robber then fled with approximately $2,200 in cash. A witness saw him leaving the parking lot in a white Chevrolet Monte Carlo.

¶4. After interviewing Daly and other witnesses, the Petal Police Department obtained photographs from the bank's surveillance cameras of Daly and other customers who had been in line when the bank opened that morning. The photographs showed a man in a distinctive dark jacket with white lettering, which looked like it could be some sort of security jacket. When shown the photos, Daly said that the man wearing the jacket looked like the robber.

¶5. The Petal Police Department also put out a "be on the lookout" (BOLO) for a white Monte Carlo. The BOLO advised that the suspect had flashed a badge and was carrying a handgun. Deputy Phillip Hendricks of the Forrest County Sheriff's Department read the BOLO when he came on duty that evening and immediately suspected Joe Johnson because he had previously encountered Johnson driving a white Monte Carlo, wearing a security badge, and carrying a handgun. Hendricks contacted the Petal Police Department, and he and another deputy accompanied two Petal police officers to Johnson's house.

3

¶6.    When the officers arrived at Johnson's house, Johnson hid in a closet and told his girlfriend (Vicki Reese) and another woman staying at the house (Precious Longino) to tell the officers that he was not home. Reese and Longino did as instructed, but when the officers said they would return with a search warrant, Reese relented, and Johnson came out and consented to a search of his home. The officers found a black jacket with white lettering that appeared to be the same as the one worn by the man in the bank surveillance photos. They also found two $100 bills hidden under a mattress.

¶7.    Johnson admitted to police that he was waiting in line at the bank when it opened that morning. He was there to cash a check from his aunt, but he was unable to do so because there were insufficient funds in her account. Johnson also admitted that he went to the post office after leaving the bank. He claimed that he wanted to check the cost of shipping a package but left without doing so because there was a long line.

¶8.    That evening, Daly positively identified Johnson from a photo lineup, and Johnson was arrested. Daly also positively identified Johnson at trial as the man who had robbed him.

¶9.    Reese testified at trial that when the police arrived at Johnson's house on the day of the robbery, Johnson told her to retrieve some money he had hidden in their mattress and to hide it in her pants. Reese found the money (approximately $2,200) and did as instructed, although she dropped the two $100 bills that the police found in their search of the house. After Johnson was arrested, he told Reese to use the remaining $2,000 to post bond for him, which she did. Reese assumed that the money had come from the robbery because Johnson did not have a job. Longino testified that on the day of the robbery Johnson was walking

4

around the house "talking about getting a car," which she thought odd since he did not have a job, but "all of a sudden he pulled out a big wad of cash."

¶10. Reese also testified that after Johnson was arrested, he called her from jail and told her that he had hidden two guns in the vent behind their washing machine. Johnson instructed Reese to take the guns to a woman named Samone Blue, who lived in Magee. Reese looked in the vent, found two handguns, and took them to Blue.

¶11. At the conclusion of Johnson's two-day trial, the jury returned a guilty verdict. Johnson filed a motion for a new trial or judgment notwithstanding the verdict, which was denied, and he appealed. Although his appointed counsel filed a *Lindsey* brief, Johnson filed a pro se brief raising three issues. As discussed below, none has merit, and so we affirm.

## DISCUSSION

### I. Ineffective Assistance of Trial Counsel

¶12. Johnson claims that trial counsel provided ineffective assistance in several respects. To prevail on such a claim, a defendant must show not only that counsel's performance fell below the minimum constitutional standard laid out in *Strickland v. Washington*, 466 U.S. 668, 686-88 (1984), but also that counsel's errors were prejudicial, i.e., "so serious that they deprived the defendant of a fair trial, that being a trial with a reliable result." *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006). "If either prong is not met, the claim fails." *Id.*

¶13. "It is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal" "because . . . there is usually insufficient evidence

5

within the record to evaluate the claim." *McClendon v. State*, 152 So. 3d 1189, 1191-92 (¶17) (Miss. Ct. App. 2014) (quoting *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2002)).  Because an appellate court "is limited to the trial record on direct appeal, issues of ineffective assistance of counsel are more appropriate in a motion for post-conviction relief." *Sandlin v. State*, 156 So. 3d 813, 819 (¶20) (Miss. 2013).  We may address such claims on direct appeal only "if the issues are based on facts fully apparent from the record." *Id.*  "If the record is not sufficient to address the claims on direct appeal, the Court should dismiss the claims without prejudice, preserving the defendant's right to raise the claims later in a properly filed motion for post-conviction relief." *Id.*

¶14.    Several of Johnson's allegations of ineffective assistance "are based on facts not fully apparent from the record" and thus cannot be addressed on direct appeal. *Id.*  Specifically, his allegations that "trial counsel failed to investigate and present available evidence," including the testimony of Samone Blue, surveillance footage from the crime scene, and county jail phone logs and recordings of his telephone calls with Vicki Reese, cannot be addressed on direct appeal.  The claim regarding Blue relies on an affidavit from her that is not in the record, and the other claims are bare assertions unsupported by the record.  These failure-to-investigate claims cannot be adjudicated on the present record and thus must be raised, if at all, in a post-conviction petition. *See, e.g.*, *Page v. State*, 987 So. 2d 1035, 1037-38 (¶¶7-12) (Miss. Ct. App. 2008).  Accordingly, these claims are dismissed without prejudice. *Sandlin*, 156 So. 3d at 819 (¶20).

¶15. Johnson's other two claims are capable of adjudication on direct appeal but lack merit. First, Johnson says that trial counsel was ineffective because he failed to move to quash the indictment on the ground that it was not stamped "filed" by the circuit clerk. However, the indictment was properly dated and signed, and there is no doubt that Johnson was informed of the nature of the charges against him. Thus, omission of the clerk's file-stamp "was a matter of form," not substance. *McCain v. State*, 81 So. 3d 1130, 1140 (¶33) (Miss. Ct. App. 2011). An objection on that ground would not have required dismissal of the indictment. *See id.*; *Fairley v. State*, 163 Miss. 682, 138 So. 330, 333 (1931). Accordingly, counsel's failure to make such an objection, whether a deliberate decision or an oversight, was neither constitutionally ineffective nor prejudicial.

¶16. Second, Johnson says that trial counsel was ineffective because he failed to obtain a ruling on his pretrial motion in limine to exclude evidence pursuant to Mississippi Rule of Evidence 404(b) and to prohibit witness statements and a written narrative by Deputy Hendricks from being shown to the jury. While it is true that there does not appear to have been a written or on-the-record ruling on the motion, Johnson does not cite, and we have not found, any instance in which such evidence was admitted or the witness statements or narrative were shown to the jury. Accordingly, this issue is without merit.

## II. Ineffective Assistance of Appellate Counsel

¶17. Johnson next argues that his appellate counsel's filing of a *Lindsey* brief constitutes ineffective assistance of counsel. "The standard for considering ineffective assistance of counsel is the same for appellate performance as it is for trial performance." *Foster v. State*,

7

687 So. 2d 1124, 1138 (Miss. 1996). Appointed counsel "does not have a constitutional duty to raise every nonfrivolous issue requested by defendant," *id.*, and has an ethical duty as an officer of the court *not* to raise frivolous issues, *see Lindsey*, 939 So. 2d at 747 (¶17). Having reviewed the record and issues raised in Johnson's pro se brief, we agree that there were no arguable issues for appeal, and so counsel's filing of a *Lindsey* brief was proper. Moreover, because the basis of Johnson's claim is appellate counsel's failure to pursue the issues that he raises in his pro se brief, and because we have independently determined that those issues lack merit, Johnson cannot possibly establish ineffectiveness or prejudice.[2] Accordingly, Johnson's claim of ineffective assistance of appellate counsel fails.

### III.    Alleged Limitation of Cross-Examination of Reese

¶18.    Johnson's final argument on appeal is that the trial court improperly limited his cross-examination of Reese. In the portion of the transcript that Johnson cites, his attorney cross-examined Reese about the fact that her initial (March 4, 2013) statement to police included none of the incriminating testimony that she had given at trial, and that she had disclosed this information to police for the first time two months later. The assistant district attorney objected at one point in this part of the cross-examination, there was an off-the-record bench conference, and cross-examination continued without an on-the-record ruling. From context and the question that followed, it is unclear what the trial judge may have said at the bench

---

[2] In *Ratliff v. State*, 162 So. 3d 842 (Miss. Ct. App. 2014), *cert. denied*, 163 So. 3d 301 (Miss. 2015), we held that a claim of ineffective assistance of appellate counsel was premature and not ripe for review on direct appeal. *See id.* at 848-49 (¶¶27-31). There, however, the issue was counsel's alleged failure to consult and communicate with the defendant. *See id.* Here, in contrast, the claim is failure to raise issues on appeal, which we can readily evaluate based on the record on appeal.

conference. But in any event, Johnson's attorney was able to make the points that Reese's second statement to police differed greatly from her first, that she waited two months to come forward with information that incriminated Johnson, and that she did so only after she had gotten angry at Johnson for failing to pay the electric bill, which caused the power at their house to be cut off. Under these circumstances, the alleged error is waived. *Hayes v. State*, 801 So. 2d 806, 810 (¶9) (Miss. Ct. App. 2001) ("A party's failure to obtain a ruling on an objection prevents our consideration of the alleged error."). And even if there was an error, it was harmless. *See Collier v. State*, No. 2014-KA-00087-SCT, 2015 WL 1737382, at *6-7 (¶¶27-32) (Miss. Apr. 16, 2015).

## CONCLUSION

¶19. The issues raised in Johnson's pro se brief are without merit. His convictions are affirmed.

¶20. **THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION; AND TO PAY A FINE OF $2,500, AND $250 IN RESTITUTION TO THE FORREST COUNTY PUBLIC DEFENDER'S FUND, AND $100 TO THE MISSISSIPPI CRIME VICTIMS' COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**